# Richmond

## W. W. RICHARDSON v. COMMONWEALTH OF VIRGINIA.

March 12, 1951.

Record No. 3774.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*M. Wallace Moncure, Jr.* and *Irby Turnbull,* for the plaintiff in error.

· *J. Lindsay Almond, Jr., Attorney General* and *Thomas M. Miller, Assistant Attorney General,* for the Commonwealth.

HUDGINS, C. J., delivered the opinion of the court.

W. W. Richardson, by this writ of error, seeks to reverse a judgment entered on the verdict of a jury finding him guilty of involuntary manslaughter and imposing a fine of $500.

At approximately 12:00 noon, on January 16, 1950, J. E. Seay was walking east on the north shoulder of Highway No. 360, in Charlotte county, Virginia. W. W. Richardson, defendant, was driving his tractor trailer truck behind a similar tractor trailer, traveling east on the highway and approaching Seay from the west. Defendant, in an attempt to pass the truck in front of him, drove over on the north shoulder, struck and killed Seay.

Defendant's only contention is that the evidence was insufficient to establish that degree of recklessness, or wanton negligence necessary to constitute the crime of manslaughter.

The violation of one or more of the statutes (secs. 46-208-219), defining reckless driving, and the statutes (secs. 46-220-242), prescribing "The Rules of the Road" is negligence sufficient to support a civil action if such negligence was the proximate cause of the injury or damage sustained. But mere violation of one of these statutes is insufficient to bring the negligent act within the common law definition of involuntary manslaughter, unless the proof discloses that the act, or acts, of negligence charged are so flagrant, so culpable and wanton as to indicate a reckless disregard of human life. Where the negligent act amounts to recklessness, it becomes a crime, and "where

there is no recklessness, there is no crime.'' *Davis* v. *Commonwealth,* 150 Va. 611, 143 S. E. 641; *Goodman* v. *Commonwealth,* 153 Va. 943, 151 S. E. 168; *Bell* v. *Commonwealth,* 170 Va. 597, 195 S. E. 675; *Albert* v. *Commonwealth,* 181 Va. 894, 27 S. E. (2d) 177; 2 Michie's Jur., Automobiles, sec. 122, p. 609.

It is difficult to define, with accuracy, the line of demarcation between criminal negligence and negligence sufficient to support a civil action. The Commonwealth, in order to support a conviction of criminal negligence, must prove beyond a reasonable doubt that the act, or series of acts, charged are of such reckless, wanton or flagrant nature as to show utter disregard of the safety of others under circumstances likely to cause injury. Blashfield's Cyclopedia of Law and Practice, Perm. Ed. sec. 5388, p. 109.

The number of deaths resulting from the operation of motor vehicles on the highways has increased to such an alarming extent that the legislatures in a number of States have made a simple act of negligence which results in serious bodily injury, or death, a crime. Such statutes have been adopted in California (*People* v. *Warner,* 27 Cal. App. (2d) 190, 80 P. (2d) 737), Kansas (sec. 8-529; G. S. 1947 Sup.), and Michigan (Comp. Laws of Michigan (1929) secs. 16743-16745; *People* v. *Campbell,* 237 Mich. 424, 212 N. W. 97).

The highway was straight, approximately level for a distance of 3/10 of a mile west of the point of impact. The paved surface of the highway was 20 feet, 10 inches wide, with a gravel shoulder on the north 4 feet wide. The roadbed was dry, shoulders damp from recent rains, and visibility good. Each of the two trucks, with the trailers, was approximately 8 feet wide, and nearly 30 feet long.

Defendant had been driving at a rate of speed from 35 to 40 miles per hour behind the truck for several miles and "wanted to pass it." Defendant saw Seay walking on the left shoulder close to, and within 3 feet of, the edge of the hard-surface. As he turned his truck into the left traffic lane he increased his speed for the purpose of passing the truck. This maneuver made it obvious that the two trucks would be abreast of each other as they overtook Seay. This would force defendant to drive his truck close to, or on the north shoulder, as the trucks occupied at least 16 feet of the hard-surface. Allowing 2 feet for clearance, the left side of defendant's truck, even if he had driven his truck straight, would have passed dangerously close to the

pedestrian on the shoulder. As defendant's truck was driven abreast of the other truck it skidded 41½ feet. Marks and scratches on the left side of the trailer, beginning 6 feet from the rear, indicated that that part of the body of the truck collided with Seay. The force of the impact knocked Seay forward. His body stopped rolling in the ditch 4 to 6 feet from the north edge of the hard-surface. Marks on the shoulder extended approximately 50 feet from where the body was lying to the edge of the hard-surface. At this point the skid marks made by the dual wheels of the truck indicated that the left side of the trailer was more than 11 inches over on the north shoulder.

There were numerous abrasions on Seay's body, the most severe on the right side of the head near the base of the brain. His right hip was broken. One shoe was knocked completely off and the heel of the other was knocked loose.

Seay was walking on the left shoulder of the highway, with his back to east-bound traffic, as prescribed by statute (sec. 46-247). He had a right to believe that he was in a position of safety. Defendant, in utter disregard of the rights of the pedestrian, drove his truck to the wrong side of the road, off the hard-surface, and struck him from behind.

The only logical inference from this evidence is that defendant drove his truck in such a reckless manner that the rear end of the trailer veered or swung over on the shoulder where defendant knew Seay was walking, apparently unconscious of danger.

Defendant contends that as he approached Seay from the rear he blew his horn, but the testimony on this point is contradicted. Weatherford, who was riding with defendant, stated that he "was trying to go to sleep" and he heard a horn blow a couple of times, felt the truck sway, straightened up in the cab and saw Seay's body lying on the side of the road. On cross-examination he stated he could not say who blew the horn.

Mr. Carson Toombs testified that the impact occurred in front of his residence which was 50 feet from the north side of the highway. He was sitting in his home reading and in a position to hear defendant's horn if it had blown. He testified that he did not hear a horn blow, but did hear the air brakes when they were applied. He looked out of his window and saw the two trucks coming side by side, with the front of Richardson's truck not quite even with the front of the other truck, and at

the same moment he saw Seay's body as it fell, or was knocked, away from the Richardson truck.

Defendant testified that Seay did not look back and did not indicate that he knew that a truck was approaching him from behind.

It is a matter of common knowledge that these long, high, wide and heavy trailers attached to motor vehicles, equipped with extra power, traversing the highways, create extra danger to other users thereof. ''Their length and weight, accompanied by extra power, vests them with extra force, but should not vest them with extra privilege. It is particularly true, when changing the course of the tractor to right or left, that it is most difficult to calculate with exactitude the effect upon the trailer, and this very fact * * * requires greater precaution'' for the safety of others, *Horton Motor Lines* v. *Currie,* 92 F. (2d) 164.

On a narrow road, traveling at a high speed, defendant attempted to drive the vehicle described in such manner as would necessarily require him to pass within 2 feet of a pedestrian who was apparently oblivious of the approaching danger and walking on the shoulder where he had a right to be. Defendant knew, or should have known (1) that when he changed the course of his tractor he could not ''calculate with exactitude'' how far the trailer would swing or swerve over and upon the north shoulder, and (2) that injury to Seay was not improbable.

The evidence fully justified the jury in finding defendant guilty of such reckless, wanton and flagrant negligence as to evince an utter disregard for the safety of others under circumstances likely to cause injury.

The judgment of the trial court is affirmed.

*Affirmed.*