COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton, Coleman, Willis,
          Elder, Bray, Annunziata, Bumgardner, Lemons and Frank
Argued at Richmond, Virginia


CHRISTOPHER SCOTT CONRAD
                                        OPINION BY
v.  Record No. 0321-98-2     CHIEF JUDGE JOHANNA L. FITZPATRICK
                                      NOVEMBER 30, 1999
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF HENRICO COUNTY
L. A. Harris, Jr., Judge

Lee W. Kilduff (Morchower, Luxton & Whaley,
on brief), for appellant.

Leah A. Darron, Assistant Attorney General
(Mark L. Earley, Attorney General, on
brief), for appellee.


Christopher Scott Conrad (appellant) appealed the trial

court's conviction for involuntary manslaughter.  Appellant

argued that the evidence was insufficient to prove he acted in a

criminally negligent manner.  A panel of this Court agreed and

reversed his conviction.  See Conrad v. Commonwealth, 29 Va.

App. 661, 514 S.E.2d 364 (1999).  We granted the Commonwealth's

request for rehearing en banc, and upon rehearing, we affirm

appellant's conviction.

                            I.

Under familiar principles of appellate review, we examine

the evidence in the light most favorable to the Commonwealth,

the prevailing party below, granting to it all reasonable inferences fairly deducible therefrom. See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997). The judgment of a trial court, sitting without a jury, is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that it is plainly wrong or without evidence to support it. See Stevens v. Commonwealth, 14 Va. App. 238, 240, 415 S.E.2d 881, 882-83 (1992).

So viewed, the evidence established that on May 11, 1997, at about 9:00 a.m., on Gayton Road in Henrico County, appellant fell asleep at the wheel of his automobile and drove off the road, striking and killing Judy Dahlkemper, who was jogging on the side of the road. Officer R.J. Smith (Smith) responded to the scene. Shortly after 11:00 a.m., after examining the physical evidence, Smith took appellant's statement. Smith described appellant as "extremely tired" with bloodshot eyes and a faint odor of alcohol about his person.

Appellant told Smith that he had last slept on May 10, the day before the accident, arising at 11:00 a.m. after six hours of sleep. It was not unusual for appellant to stay up for long periods of time because he had been working an irregular schedule at a retail store and playing in a band. On May 10, appellant worked a shift at the retail store, ran errands, practiced with his band and went to the home of a friend in

-

Richmond. While at his friend's home, between about 11:00 p.m. and 1:30 a.m., appellant consumed about fifty ounces of beer.[1] He remained at his friend's home, awake and watching television, until about 8:45 a.m. on May 11, at which time he left to drive home. Appellant testified that he was not sleepy before he left for home and that it had not occurred to him that he might fall asleep on the drive home.

Appellant traveled about twenty minutes on Interstate 64 to Gaskins Road. As appellant exited Interstate 64, "he really got tired and felt himself going to sleep." Because he was only about five minutes or four-and-one-half miles from home, "he did not really want to stop." He reported to Officer Smith that "he ran off the road only after dozing off for a half second, caught himself drifting four or five times, still nodding, but said he would catch himself and said [he] would snap out of it." On Gayton Road, a little over one-half mile from his home, he fell asleep and heard a loud noise. He initially thought someone had hit his car with a bottle, but then he saw the body and stopped his vehicle.

---

[1] When Officer Smith first asked appellant whether he had consumed any alcohol, appellant said he had not. However, when Smith asked appellant for consent to test his blood for alcohol, appellant admitted his alcohol consumption. A blood test performed "a little after noon" on May 11 was negative for drugs or alcohol. During argument, the trial court commented, "[T]here's no evidence that his drinking . . . was the cause of [the accident]," and the court made no mention of appellant's drinking in finding him guilty.

-

Another driver on the road, Mary Elizabeth Harris (Harris), testified that she had been driving behind appellant, who was traveling at the forty-five mile-per-hour speed limit. Appellant traveled approximately two-tenths of a mile before Harris saw his car veer right into a turn lane and strike the jogger, Ms. Dahlkemper, who had been running, facing traffic, on the edge of the turn lane near the adjacent grass. Appellant's vehicle displayed no turn indicator and did not brake prior to impact. Officer Smith determined that Ms. Dahlkemper had been jogging eighteen inches from the edge of the pavement when she was struck, and he confirmed that appellant had not applied his brakes prior to impact.

At trial, appellant testified to substantially the same version of events that he had given to Officer Smith at the scene. Appellant stated that when he turned onto Gayton Road, he began to yawn, was "incredibly close to dozing off," and "was starting to kind of drift . . . in the road." However, he "[did not] recall" telling Officer Smith that he had caught himself about to doze off on four to five occasions prior to the accident and said he believed that he told Officer Smith he had done so only one or two times. He also said he had not gone off the road prior to the accident but had "com[e] [within] about . . . an inch [of] the line."

At the conclusion of the presentation of evidence by both parties, the trial court found that appellant's actions

-

constituted a gross, wanton disregard for human life, stating

the following:

>What I feel I have to do is look at the evidence under the law and see if . . . the conduct rises to the level of reckless driving or involuntary manslaughter. And I think the situation is this:
>
>   \*      \*      \*      \*      \*      \*      \*
>
>You've got the fact that Mr. Conrad had been up for 22 hours. He chose to drive the car some distance, . . . a fairly long distance, and did okay, under the evidence, until he got off of [Interstate] 64. But I think that's where the problem comes. He got off of 64, and at that point, as described both to Officer Smith, as well as his own testimony today, . . . he felt himself just about going to sleep. And to an extent, as he very well described, his car just drifted over to the right, but he was able to catch it on <u>four or five different occasions</u>, as he told Officer Smith, and that he was, in fact, <u>nodding in and out</u>.
>
>. . . And under those circumstances, he's driving after he's been up for 22 hours, after he knows that he is about to fall asleep to an extent that it's affecting his operation of the motor vehicle. He chose to continue to drive for 45 miles an hour in the residential area, not that that's exceeding the speed limit, because it is not, but driving at that speed to try to get home.
>
>And I think from the evidence that, at that time, that he was operating that motor vehicle in a state that he knew very well or should have known very well that he may, in fact, fall asleep. . . .

(Emphasis added). The trial court concluded that appellant's

conduct was "gross, wanton, and culpable, [and] showed a

-

disregard for human life." Accordingly, the trial court convicted appellant of involuntary manslaughter, in violation of Code § 18.2-36.

## II.

When the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the prevailing party below, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense. See Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997); Derr v. Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991). "In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Watkins v. Commonwealth, 26 Va. App. 335, 349, 494 S.E.2d 859, 866 (1998). We will not reverse the judgment of the trial court, sitting as the finder of fact in a bench trial, unless it is plainly wrong or without evidence to support it. See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

"[I]nvoluntary manslaughter in the operation of a motor vehicle [is defined] as an 'accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life.'" Greenway v. Commonwealth, 254 Va. 147, 154, 487 S.E.2d

-

224, 228 (1997) (quoting King v. Commonwealth, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977)). "[A] higher degree of negligence in the operation of a motor vehicle is required to establish criminal liability for involuntary manslaughter than to establish liability in a civil action for ordinary or even gross negligence. This higher degree of negligence has come to be known as 'criminal negligence.'" Keech v. Commonwealth, 9 Va. App. 272, 277, 386 S.E.2d 813, 816 (1989).

> "[Criminal negligence] must be more than mere inadvertence or misadventure. It is a recklessness or indifference incompatible with a proper regard for human life." Criminal negligence has also been defined as conduct "so gross, wanton, and culpable as to show a reckless disregard of human life," and conduct "so flagrant, culpable, and wanton as to show utter disregard of the safety of others under circumstances likely to cause injury," and conduct "so gross and culpable as to indicate a callous disregard of human life."

Id. at 278, 386 S.E.2d at 816 (citations omitted). As we stated in Keech, "[t]hese various definitions make clear that the distinction between the negligence which will support a conviction of involuntary manslaughter involving the operation of a motor vehicle and the negligence that will merely support a civil action is one of degree." Id.

"'The law recognizes three degrees of negligence, (1) ordinary or simple, (2) gross, and (3) willful, wanton and reckless.'" Tubman v. Commonwealth, 3 Va. App. 267, 270, 348 S.E.2d 871, 873 (1986) (quoting Griffin v. Shively, 227 Va. 317,

321, 315 S.E.2d 210, 212 (1984)). Ordinary negligence is "failure to use 'that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another.'" Id. at 271, 348 S.E.2d at 873 (quoting Griffin, 227 Va. at 321, 315 S.E.2d at 212-13). Gross negligence "is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. . . . It falls short of being such reckless disregard of probable consequence as is equivalent to a willful and intentional wrong." Newell v. Riggins, 197 Va. 490, 495, 90 S.E.2d 150, 153 (1955) (citation omitted). Finally, criminal or willful and wanton negligence "'"involves a greater degree of negligence than gross negligence, particularly in the sense that in the former an actual or constructive consciousness of the danger involved is an essential ingredient of the act or omission."'" Tubman, 3 Va. App. at 271, 348 S.E.2d at 873 (quoting Griffin, 227 Va. at 321-22, 315 S.E.2d at 213 (quoting Boward v. Leftwich, 197 Va. 227, 231, 89 S.E.2d 32, 35 (1955))).

Criminal negligence as the basis for involuntary manslaughter is judged under an objective standard and, therefore, may be found to exist where the offender either knew or should have known the probable results of his acts. See Keech, 9 Va. App. at 279, 386 S.E.2d at 817 (citing Bell v. Commonwealth, 170 Va. 597, 611-12, 195 S.E. 675, 681 (1938)). Thus, criminal negligence "'is acting consciously in disregard

-

of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another.'"  Tubman, 3 Va. App. at 271, 348 S.E.2d at 873 (emphasis added) (quoting Griffin, 227 Va. at 321, 315 S.E.2d at 213; Friedman v. Jordan, 166 Va. 65, 68, 184 S.E. 186, 187 (1935)).

We have not addressed whether a driver who previously has fallen asleep while driving and who subsequently, during that same trip, again falls asleep causing an injury or death is guilty of involuntary manslaughter.  However, our decision in Hargrove v. Commonwealth, 10 Va. App. 618, 394 S.E.2d 729 (1990), provides some guidance.  In Hargrove, the defendant fell asleep while driving home after working the midnight-to-8:00-a.m. shift, striking and killing a pedestrian who was walking across the highway.  See id. at 620, 394 S.E.2d at 730-31.  The defendant made a statement at the accident scene that he was "extremely tired," he dozed off "for one second" and the accident occurred.  Id. at 620, 394 S.E.2d at 731.

We noted in Hargrove that courts in other states have found that "when a driver falls asleep and causes death a jury issue is created on the issue of whether it constituted involuntary manslaughter."  Id. at 621, 394 S.E.2d at 731 (citations omitted).  However, in reversing Hargrove's conviction for involuntary manslaughter, we concluded that the evidence failed

-

to show that he should have known that his conduct constituted a reckless disregard for human life.  We wrote:

> In this case, all the record shows about Hargrove is that he had worked the previous night and was "extremely tired" and in need of sleep.  We do not know . . . that Hargrove should have known that it was not improbable that he would fall asleep during his travel from the workplace to home. . . . In this case, the record is devoid of evidence as to the distance or time it would have required Hargrove to drive from work to home. . . .  The evidence does not exclude the reasonable hypothesis that, although Hargrove had worked all night, <u>he had not fallen asleep, had not previously dozed during the trip before the accident</u>, and, although tired and in need of sleep and having only a short distance or a trip of a few minutes to reach his home, he could reasonably have believed that he could negotiate his vehicle a short distance without endangering human life.

<u>Id.</u> at 621-22, 394 S.E.2d at 731-32 (emphasis added).  Thus, we recognized in <u>Hargrove</u> that if the defendant "had been operating his vehicle for a number of hours in a tired and sleepy condition, or while in such a state undertook a trip of such a substantial distance or time that he should have known he might fall asleep, the evidence might support a finding that he was acting in reckless disregard for human life."  <u>Id.</u> at 621-22, 394 S.E.2d at 731.

Our Supreme Court has recently enunciated the following principles of appellate review in a voluntary manslaughter case:

> When a defendant challenges on appeal the sufficiency of the evidence to sustain his conviction, it is the duty of an appellate

-

court to examine the evidence that tends to support the conviction and to permit the conviction to stand unless the conviction is plainly wrong or without evidentiary support. If there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might have reached a different conclusion.

Additionally, upon appellate review, the evidence and all inferences reasonably deducible therefrom must be examined in the light most favorable to the Commonwealth, the prevailing party in the trial court. Any evidence properly admitted at trial is subject to this review.

Presley v. Commonwealth, 256 Va. 465, 466-67, 507 S.E.2d 72, 72 (1998) (citations omitted).

Adhering to these well established principles, we conclude the evidence was sufficient to prove criminal negligence on appellant's part. Indeed, the facts of the instant case were almost presciently stated in Hargrove, where we noted that had the evidence in that case shown a propensity to fall asleep or nod off while driving, such evidence could support a finding that the accused was "acting in reckless disregard for human life." Hargrove, 10 Va. App. at 621-22, 394 S.E.2d at 731-32. Here, appellant had been up for twenty-two hours without sleep and chose to drive his vehicle "a fairly long distance" to his home in the early morning. After he exited the interstate onto Gaskins Road, he "really got tired" and "felt himself going to sleep" but did not want to stop because he was only five minutes

-

from home.  Appellant told Officer Smith that "he nodded in and out, . . . he ran off the road only after dozing off for a half second, caught himself drifting four or five times, still nodding, but . . . he would catch himself and . . . he would snap out of it."  The trier of fact accepted the Commonwealth's evidence that appellant had dozed off four or five times prior to the impact with the victim.  See Montgomery v. Commonwealth, 221 Va. 188, 190, 269 S.E.2d 352, 353 (1980) (per curiam) ("[E]ven if the defendant's story was not inherently incredible, the trier of fact need not have believed the explanation.").

Under the circumstances of this case, we conclude that sufficient evidence supports the trial court's finding that appellant should have known that his "dozing off" four or five times affected his driving abilities and, therefore, should have known of the risks that his driving conduct created.  See Keech, 9 Va. App. at 279, 386 S.E.2d at 817 (noting that criminal negligence is framed "in terms of a great risk of injury coupled with an objective awareness of that risk on the part of the offender").  We also conclude that appellant's decision to continue driving in such an impaired state was a callous act of indifference to the safety of others.  Accordingly, appellant's involuntary manslaughter conviction is affirmed.

Affirmed.

-

Elder, J., with whom Benton, Coleman and Annunziata, JJ., join, dissenting.

I disagree with the majority's legal conclusion. I would hold that the evidence is insufficient, as a matter of law, to support an involuntary manslaughter conviction. I believe the evidence fails to support a finding that appellant knew or should have known that driving no more than five minutes to his home once he became sleepy was "'likely to cause injury'" and that his failure to stop under such circumstances was "'so gross and culpable as to indicate a callous disregard of human life.'" Keech v. Commonwealth, 9 Va. App. 272, 278, 386 S.E.2d 813, 816 (1989) (citations omitted). Therefore, I respectfully dissent.

The Virginia Supreme Court has acknowledged that "the application of distinctions between [the various] degrees of negligence [recognized by the law] is frequently difficult to apply." Town of Big Stone Gap v. Johnson, 184 Va. 375, 379, 35 S.E.2d 71, 73 (1945). Although the majority correctly sets forth the general principles of law governing the crime of involuntary manslaughter, I consider it helpful to further clarify the distinctions. Ordinary negligence is "failure to use 'that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another.'" Tubman v. Commonwealth, 3 Va. App. 267, 271, 348 S.E.2d 871, 873 (1986) (quoting Griffin v. Shively, 227 Va. 317, 321, 315 S.E.2d 210, 212-13 (1984)). Gross negligence

-

"is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence."  Newell v. Riggins, 197 Va. 490, 495, 90 S.E.2d 150, 153 (1955).  It is "that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence . . . .  It must be such a degree of negligence as would shock fair minded men although something less than willful recklessness[, i.e., criminal negligence]."  Ferguson v. Ferguson, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971) (emphasis added).  Finally, criminal or willful and wanton negligence is "'[m]arked by or manifesting arrogant recklessness of justice, of the rights or feelings of others, . . . merciless; inhumane.'"  Forbes v. Commonwealth, 27 Va. App. 304, 310, 498 S.E.2d 457, 459 (1998) (citation omitted) (emphasis added).

These distinctions establish that criminal responsibility cannot be predicated upon every act carelessly performed merely because the carelessness results in the death of another. Rather, the negligence must be of such a high degree of "carelessness or recklessness" that the act of commission or "'omission must be one likely to cause death.'"  Goodman v. Commonwealth, 153 Va. 943, 948, 151 S.E. 168, 169 (1930) (citation omitted) (emphasis added).  For example, it is settled law in Virginia that "[a]nyone who falls asleep while operating an automobile on a public road is guilty of a degree of negligence exceeding lack of ordinary care."  Kennedy v.

-

Commonwealth, 1 Va. App. 469, 473, 339 S.E.2d 905, 907-08 (1986); see Newell, 197 Va. at 494, 90 S.E.2d at 152 (in civil context, observing "fact that [a driver] who permits himself to go to sleep while driving is sufficient to make out a prima facie case of want of due and proper care").  Such behavior also may be "sufficient to find the operator guilty of the offense of reckless driving."  Kennedy, 1 Va. App. at 473, 339 S.E.2d at 907-08 (upholding reckless driving conviction where driver admitted he had been sleepy fifteen minutes before unexplained accident and evidence established that family had been on the road for eight hours and that vehicle left no skid marks or other evidence of braking prior to running off the road).  However, such evidence, standing alone, proves no more than ordinary negligence or reckless driving and will not support a finding of criminal negligence required for an involuntary manslaughter conviction.  See King v. Commonwealth, 217 Va. 601, 605-06, 231 S.E.2d 312, 316 (1977) (citing Richardson v. Commonwealth, 192 Va. 55, 63 S.E.2d 731 (1951)).

A conviction for reckless driving requires proof of driving "on a highway recklessly or at a speed or in a manner so as to endanger the life, limb, or property of any person."  Code § 46.2-852.  Violation of this statute "is insufficient to bring the negligent act within the common law definition of manslaughter unless it is so flagrant, culpable, and wanton as to show utter disregard of the safety of others under

-

circumstances likely to cause injury."  King, 217 Va. at 605-06, 231 S.E.2d at 316; see also Darnell v. Commonwealth, 6 Va. App. 485, 489-92, 370 S.E.2d 717, 719-21 (1988) (applying King rationale to violation of statute prohibiting reckless handling of firearm and rejecting argument that such reckless handling equates to recklessness required to prove criminal negligence element of involuntary manslaughter).  King clearly distinguishes between acts which constitute reckless driving and acts of recklessness which constitute involuntary manslaughter.

Some states provide by statute that certain acts proximately causing death are crimes.  See King, 217 Va. at 605-06, 231 S.E.2d at 316 (citing Annotation, 20 A.L.R.3d 473 (1968)).  Virginia's legislature has enacted such a statute, providing that an unintentional death which results from an act of driving under the influence in violation of specified portions of Code § 18.2-266 constitutes involuntary manslaughter.  See Code § 18.2-36.1.  Such a conviction requires no proof that "the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life," and if the Commonwealth makes such a showing, the defendant is subject to greater punishment for "aggravated involuntary manslaughter."  Id.  The legislature, however, has not provided that death resulting from falling asleep while driving constitutes involuntary manslaughter as a matter of law.

-

To make such a finding, a court must conclude that the act of negligence proximately causing the death would do more than "shock fair minded men," the language of the standard for gross negligence.  See Ferguson, 212 Va. at 92, 181 S.E.2d at 653.  Instead, it must be negligence "so flagrant, culpable, and wanton as to show utter disregard of the safety of others under circumstances likely to cause injury."  King, 217 Va. at 605-06, 231 S.E.2d at 316 (emphasis added).  As quoted above, we have previously characterized criminal negligence as "'manifesting [an] arrogant recklessness of justice'" and rising to the level of being "'merciless'" or "'inhumane.'"  Forbes, 27 Va. App. at 310, 498 S.E.2d at 459 (citation omitted) (emphasis added).  In assessing the degree of negligence involved, a court must consider all "existing circumstances and conditions."  Tubman, 3 Va. App. at 271, 348 S.E.2d at 873.

I do not believe the evidence supports a finding that appellant acted mercilessly or inhumanely when he concluded, albeit incorrectly, that he could safely complete his trip to his home, which was only four-and-one-half miles away when he first became sleepy.  In affirming appellant's conviction, the majority relies in part on this Court's decision in Hargrove v. Commonwealth, 10 Va. App. 618, 394 S.E.2d 729 (1990).  It observes that the facts of appellant's case "were almost presciently stated in Hargrove, where we noted that had the evidence . . . shown a propensity to fall asleep or nod off

-

while driving, such evidence could support a finding that the accused was 'acting in reckless disregard for human life.'"  In reversing the involuntary manslaughter conviction in Hargrove, we held:

> [T]he evidence does not exclude the reasonable hypothesis that, although Hargrove had worked all night, he had not fallen asleep, had not previously dozed during the trip before the accident, and, although tired and in need of sleep and having only a short distance or a trip of a few minutes to reach his home, he could reasonably have believed that he could negotiate his vehicle a short distance without endangering human life.

Id. at 622, 394 S.E.2d at 731-32.  I believe the majority erroneously utilizes Hargrove to support its holding.

First, we did not hold in Hargrove that a driver's "[having] previously dozed during the trip before the accident" mandated a finding, or even was sufficient to support a finding, that the driver was on notice that he would fall asleep again, causing injury to another, before reaching his destination.  See id. at 622, 394 S.E.2d at 732.  Even if we purported to make such a finding in Hargrove, it would have been dicta, for no evidence indicated that Hargrove, in fact, had previously fallen asleep during his travel from work to home.  The facts in Hargrove proved only that Hargrove knew he was sleepy before leaving for home, which we found insufficient to prove the criminal negligence necessary to support an involuntary

-

manslaughter conviction.  See id. at 621-22, 394 S.E.2d at

731-32.

Second, Hargrove erroneously attempted to distinguish the

events in Hargrove from those in Kennedy v. Commonwealth, 1 Va.

App. 469, 339 S.E.2d 905 (1986).  See Hargrove, 10 Va. App. at

621-22, 394 S.E.2d at 731-32.  In Kennedy, we affirmed a

conviction for reckless driving upon evidence establishing that

Kennedy knew he was tired and subsequently fell asleep at the

wheel, running off the road.  See Kennedy, 1 Va. App. at 472-73,

339 S.E.2d at 907-08.  However, no death resulted from Kennedy's

reckless driving, and we had no occasion to consider whether

Kennedy's acts amounted to criminal negligence.  See King, 217

Va. at 605-06, 231 S.E.2d at 316 (holding that reckless driving

conviction does not require proof of criminal negligence).

Therefore, Hargrove's attempt to distinguish Kennedy also is

dicta and does not control the outcome of this case.[2]

---

[2] In Hargrove, in its unnecessary effort to distinguish the facts in Kennedy, the panel noted that Kennedy involved a driver who "knew he was fatigued and sleepy and had been driving several hours in that condition before the accident."  Hargrove, 10 Va. App. at 621, 394 S.E.2d at 731.  However, the opinion in Kennedy does not support the assertion that Kennedy "had been driving several hours in [a fatigued and sleepy] condition." Although Kennedy had napped earlier and had been driving for several hours, the only evidence described in the opinion regarding fatigue in the period of time leading up to the accident indicated that appellant "had pulled into a rest stop fifteen minutes earlier to take a nap because he was sleepy" but that he felt refreshed and capable of proceeding after simply walking around.  See Kennedy, 1 Va. App. at 470-72, 339 S.E.2d at 906-07.

-

Third, the language in Hargrove necessary to the decision in that case does not support the result the majority reaches. Had appellant fallen asleep and struck the jogger immediately after exiting Interstate 64 onto Gaskins Road before becoming tired, he would have been no more culpable than Hargrove and perhaps even less so. Hargrove knew he was tired before he dozed off and struck the pedestrian, and the record did not establish how far he had to drive. See Hargrove, 10 Va. App. at 621, 394 S.E.2d at 731. Appellant, however, was not tired until he reached a point only five minutes from home. Therefore, when appellant exited Interstate 64, "he could reasonably have believed that he could negotiate his vehicle a short distance without endangering human life." See id. at 622, 394 S.E.2d at 732. Of course, the evidence establishes that, after appellant exited the interstate, he became sleepy and felt himself "[run] off the road . . . after dozing off for [only] a half second." However, to conclude that appellant acted mercilessly or inhumanely in failing to pull over the instant he felt himself doze would be to ignore other "existing circumstances and conditions" in the case. Those other circumstances indicate that appellant, who was less than five minutes from home at that point, "caught himself drifting four or five times" but was able to "catch himself and . . . snap out of it" on each occasion. Thereafter, for about two-tenths of a mile before leaving the

-

road and striking the jogger, appellant maintained the speed limit and engaged in no weaving or other erratic driving.

Although appellant testified he was not sleepy before he left his friend's home, the trial court was entitled to disbelieve and reject appellant's testimony.  See Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc).  However, rejecting that explanation did not provide affirmative evidence that appellant was, in fact, sleepy before he left his friend's home.  Therefore, the evidence, viewed in the light most favorable to the Commonwealth, did not exclude the reasonable hypothesis that appellant became sleepy, as he told Officer Smith, only after leaving Interstate 64, when he was only five minutes from home.  Under all these circumstances, I cannot conclude that appellant knew or should have known that his conduct in proceeding the short distance to his home "likely would cause injury to another" or that he acted mercilessly or inhumanely in failing to stop.  That his conduct did, in fact, result in death is tragic and may constitute ordinary or even gross negligence, but it does not, without more, support a finding of criminal negligence.

For these reasons, I would reverse appellant's conviction.

-