UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Decker and O'Brien
Argued at Richmond, Virginia


JOHN EDWARD HARDIN

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1246-16-2          JUDGE MARY GRACE O'BRIEN
                                                    SEPTEMBER 5, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HANOVER COUNTY
J. Overton Harris, Judge

C. David Whaley (David Whaley, LLC, on brief), for appellant.

David M. Uberman, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Following a bench trial, the court convicted John Edward Hardin ("appellant") of

involuntary manslaughter, in violation of Code § 18.2-36.  Appellant contends that the court erred in

finding him guilty because the "Commonwealth failed to prove beyond a reasonable doubt that he

acted with criminal negligence in causing" the victim's death.  Finding no error, we affirm.

BACKGROUND

On the night of June 7, 2015, appellant was driving an eighteen-wheel tractor-trailer north

on Route 1 in Ashland, Virginia.  At approximately 10:56 p.m., his vehicle struck and killed

Kristina Goodrow ("the victim") while she was riding her bicycle on the side of the road.  At the

location of the accident, Route 1 is a straight, undivided highway with two northbound lanes and

two southbound lanes.  A solid white line separates the right northbound lane from the shoulder,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

where the victim was riding. This stretch of Route 1 has no streetlights, and the speed limit is forty-five miles per hour.

Appellant hit the left end of the victim's handlebar with the right front cowling of his truck. The impact threw the victim from her bicycle and beneath the truck, where she was struck. She died from blunt force trauma to her head, neck, and torso. The only damage to the bicycle was a scuff mark on the left handlebar, and appellant's truck also had a "large, black scuff mark and a scratch mark . . . just behind the right, front headlight."

After the collision, appellant brought his vehicle to a complete stop over a distance of 408.9 feet.[1] Sergeant Ethan Hicks and Officer Grant Bonistalli of the Ashland Police Department responded to the scene. Appellant told Sgt. Hicks that while traveling north on Route 1, he saw something "he thought was riding in the roadway," but "[h]e thought that he passed it, he wasn't sure that he hit it, if he hit it." In an interview with Officer Bonistalli at the scene, appellant stated that he saw a bicyclist riding on the road and he "got over as far as [he] could," but he was unable to change lanes because there were "people in [the left] lane." Appellant also told Officer Bonistalli that he had his bright lights on and he first saw the victim's bicycle from "probably four to five hundred feet" away, "as far as the headlights could go." Additionally, appellant gave Officer Bonistalli the following written statement:

> I noticed what looked like a person riding a bicycle in a weaving manner. It was dark, and I could not be sure. I thought I heard a thump as I passed by. At the same time, I weaved to the left, into the other lane to my left to avoid the person riding the bike. I stopped my truck and went back[,] walking to see what happened. There were several police there already[,] as well as some other motorist[s] in cars.

---

[1] Officer Bonistalli calculated this distance by measuring between where appellant's truck stopped after the collision and where blood spatter first appeared on the road.

At trial, the Commonwealth presented evidence that Route 1's right northbound lane was approximately eleven feet wide. The front of appellant's truck was about eight feet wide, and the handlebars of the victim's bicycle were slightly more than two feet wide.

Dale Copenhaber, a witness for the Commonwealth, testified that he had been driving behind appellant in the northbound lane for slightly less than a mile, with one car between them. Copenhaber stated that appellant, who had been traveling between forty-five and fifty miles per hour, suddenly "hit his brakes hard" and pulled off to the side of the road. Copenhaber testified that he did not observe appellant apply his brakes, honk his horn, slow down, or attempt to move into the left lane before the collision. He also did not see any vehicles that would have prohibited appellant from moving into the left lane. He acknowledged that a security video from a nearby business showed three or four cars that passed appellant's truck after the accident before Copenhaber stopped, but the video did not establish whether the cars were in the left or right lane.

Appellant contradicted his initial statement to Officer Bonistalli and testified that when he initially observed the victim on her bicycle, she was between 150 and 180 feet away from him. He stated that he had "no idea" why he told Officer Bonistalli that he was four to five hundred feet away when he first saw her, and if he was that far away, he "could have made a U-turn" in that distance. Appellant testified that the victim was "wobbling at an angle" toward the roadway. He stated that approximately two to two-and-a-half seconds later he heard a "thud" but did not have enough time before the collision to honk his horn or apply his brakes. He also explained why he did not change lanes: "I perceived there were cars in the left lane. I could see headlights all over. And, I thought for sure I would pass that person."

At the conclusion of the evidence, the court found appellant guilty of involuntary manslaughter. The court made a specific finding that appellant first saw the victim from a distance of four to five hundred feet. This appeal followed.

ANALYSIS

Appellant contends that the Commonwealth's evidence was insufficient to establish that he acted with criminal negligence when he struck and killed the victim. He asserts that the record does not support the court's factual finding that he initially saw the victim from a distance of four to five hundred feet and had time to avoid the collision.

## A. Standard of Review

When considering a challenge to the sufficiency of the evidence to support a conviction, "this Court reviews the evidence in the light most favorable to [the Commonwealth, as] the prevailing party at trial[,] and consider[s] all inferences fairly deducible from that evidence." Allen v. Commonwealth, 287 Va. 68, 72, 752 S.E.2d 856, 859 (2014) (quoting Crawford v. Commonwealth, 281 Va. 84, 111, 704 S.E.2d 107, 123 (2011)). "We review lower court factfinding with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006). Therefore, we will only reverse the court's judgment "upon a showing that it 'is plainly wrong or without evidence to support it.'" Wilson v. Commonwealth, 272 Va. 19, 27, 630 S.E.2d 326, 330 (2006) (quoting Code § 8.01-680).

## B. Involuntary Manslaughter

Involuntary manslaughter resulting from the operation of a motor vehicle is defined as an "accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life." Greenway v. Commonwealth, 254 Va. 147, 154, 487 S.E.2d 224, 228 (1997) (quoting King v. Commonwealth, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977)). The Commonwealth must establish that a defendant committed "acts . . . of a wanton or wil[l]ful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned." Rich v. Commonwealth, 292 Va. 791, 802, 793 S.E.2d 798, 804 (2016)

(quoting Riley v. Commonwealth, 277 Va. 467, 484, 675 S.E.2d 168, 177 (2009)). Criminal

negligence is "more than mere inadvertence or misadventure. It is a recklessness or indifference

incompatible with a proper regard for human life." Kelly v. Commonwealth, 42 Va. App. 347, 356,

592 S.E.2d 353, 357 (2004) (quoting Bell v. Commonwealth, 170 Va. 597, 611, 195 S.E. 675, 681

(1938)).

Further,

> [t]he "improper" performance of the lawful act, to constitute
> involuntary manslaughter, must amount to an unlawful commission
> of such lawful act, not merely a negligent performance. The
> negligence must be criminal negligence. The accidental killing must
> be the proximate result of a lawful act performed in a manner "so
> gross, wanton, and culpable as to show a reckless disregard of human
> life."
>
> Stated differently, reckless conduct must amount to unlawful
> conduct in order to sustain a charge of involuntary manslaughter.
> And it is immaterial whether the unlawful act was unlawful in its
> inception, that is, an inherently unlawful act, such as discharging a
> deadly weapon into a crowded street, or became unlawful after it was
> begun, such as lawfully operating a vehicle in a public street but so
> accelerating its speed that it may cause death or serious bodily harm
> to persons in that street.

Gooden v. Commonwealth, 226 Va. 565, 571, 311 S.E.2d 780, 784 (1984) (internal citations

omitted). "[T]he Court applies an objective standard [to determine if conduct rises to the level of

criminal negligence;] the test is whether the defendant 'knew or should have known the probable

results of [his] acts.'" Miller v. Commonwealth, 64 Va. App. 527, 543-44, 769 S.E.2d 706, 714

(2015) (quoting Jones v. Commonwealth, 272 Va. 692, 701, 636 S.E.2d 403, 408 (2006)).

C. Uncorroborated Confession

Appellant initially contends that his statement to police that he first saw the victim from a

distance of four to five hundred feet is an "uncorroborated confession" which, standing alone,

cannot establish his guilt. "[A]n accused cannot be convicted solely on his uncorroborated

extrajudicial admission or confession." Watkins v. Commonwealth, 238 Va. 341, 348, 385 S.E.2d

- 5 -

50, 54 (1989).  However, such a confession differs from an "admission" of fact tending to prove guilt.

> [A] "confession" is . . . a statement admitting or acknowledging all facts necessary for conviction of the crime at issue.  An "admission," on the other hand, consists of an acknowledgement of a fact or facts tending to prove guilt but falling short of an admission to all essential elements of the crime.

Carminade v. Commonwealth, 230 Va. 505, 510, 338 S.E.2d 846, 849 (1986) (quoting E. Cleary, McCormick's Handbook of the Law of Evidence § 144, at 362 (3d ed. 1984) (footnotes omitted)). "The *corpus delicti* of homicide has two components: '(1) the death of the party alleged to have been [killed], and (2) the fact that death resulted from the criminal act or agency of another person.'"  Aldridge v. Commonwealth, 44 Va. App. 618, 648-49, 606 S.E.2d 539, 554 (2004) (quoting Clark v. Commonwealth, 220 Va. 201, 209, 257 S.E.2d 784, 789 (1979)).

Here, appellant's statement qualified as an admission against penal interest because it tended to show appellant's guilt.  See Prince v. Commonwealth, 228 Va. 610, 613, 324 S.E.2d 660, 662 (1985).  Because the statement did not establish both elements of the *corpus delicti* for involuntary manslaughter, it was not a confession, and we do not need to address whether it was corroborated by other evidence.

### D.  Criminal Negligence

Appellant asserts that the only evidence of his criminal negligence was his statement that he first saw the victim when he was four to five hundred feet away from her.  He argues that other evidence, including his later statements and trial testimony, supports his contention that he struck the victim immediately after he first saw her on the road.  He also contends that his mere failure to take evasive action, without any reckless driving behavior, is insufficient to establish that he was criminally negligent.

It is the fact finder's responsibility to weigh the evidence. "The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact[]finder's determination." Keyes v. City of Virginia Beach, 16 Va. App. 198, 199, 428 S.E.2d 766, 767 (1993). The "fact[]finder may 'believe [a defendant's statements] in whole or in part, as reason may decide.'" Vasquez v. Commonwealth, 291 Va. 232, 251, 781 S.E.2d 920, 931 (2016) (quoting Durham v. Commonwealth, 214 Va. 166, 169, 198 S.E.2d 603, 606 (1973)). Additionally, "the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

The court was entitled to believe that appellant's initial statement to Officer Bonistalli was truthful, and to disregard appellant's later inconsistent statements. See Haskins v. Commonwealth, 44 Va. App. 1, 10, 602 S.E.2d 402, 406 (2004) (fact finder entitled to discount defendant's self-serving statements as little more than lying to "conceal his guilt" (quoting Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004))). In making its credibility determination, the court noted that "[e]ven though [appellant] wants to give inconsistent testimony today, I'm entitled to believe that what he said then was, in fact, true." Clearly, the court found appellant's initial statement to be more believable than the subsequent explanations he gave to police and to the court during his testimony. This credibility determination was entirely within the province of the court as the finder of fact.

Appellant also contends there was no evidence to prove that even if he saw the victim from four to five hundred feet away, he would have been able to avoid hitting her. In support of his argument, he notes the lack of evidence concerning the stopping distance for his vehicle. Dale Copenhaber, who was traveling behind appellant, testified that appellant "hit his brakes hard" after the collision. At trial, Officer Bonistalli testified that he calculated the distance from the initial

collision to the location where appellant stopped.  The distance measured 408.9 feet.  Appellant testified that if he saw the victim from four to five hundred feet away, he "could have made a U-turn in that" distance.  Granting all "reasonable inferences fairly deducible from [the] evidence" in favor of the Commonwealth as the prevailing party at trial, the officer's measurement indicates that appellant was able to make a complete stop in 408.9 feet and therefore, could have avoided hitting the victim.  Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999).

Finally, appellant asserts that the evidence was insufficient to establish that he acted with criminal negligence.  He relies on Jenkins v. Commonwealth, 220 Va. 104, 255 S.E.2d 504 (1979), in support of his contention that his failure to reduce his speed or take other evasive action did not constitute criminal negligence.  However, his reliance is misplaced.  In Jenkins, the defendant was driving down a rural, unmarked road at approximately 1:30 a.m. when a man dressed in dark clothes suddenly appeared in the middle of the road.  Id. at 106, 255 S.E.2d at 505.  Although the defendant "applied his brakes abruptly," he was "unable to avoid striking the victim."  Id.  The Court reversed the defendant's conviction of involuntary manslaughter because there was no evidence that the defendant saw the victim until immediately prior to striking him.  Id. at 107-08, 255 S.E.2d at 506. Here, however, the court found that appellant saw the victim approximately four to five hundred feet before the accident, and the Commonwealth's evidence proved that appellant was able to make a complete stop in 408.9 feet.

Appellant's conduct is similar to that which amounted to criminal negligence in Richardson v. Commonwealth, 192 Va. 55, 63 S.E.2d 731 (1951).  In that case, the defendant, who was operating a tractor-trailer, attempted to pass a tractor-trailer in front of him.  Id. at 56, 63 S.E.2d at 732.  While executing the maneuver, part of the defendant's truck veered onto the shoulder where he struck and killed a pedestrian.  Id.  The Court upheld a finding of criminal negligence because the defendant, in attempting to pass the vehicle ahead, drove his truck "in such manner as would

- 8 -

necessarily require him to pass within 2 feet of a pedestrian who was apparently oblivious of the approaching danger and walking on the shoulder where he had a right to be." Id. at 59, 63 S.E.2d at 733. The Court found that the defendant's driving behavior "evince[d] an utter disregard for the safety of [another] under circumstances likely to cause injury." Id.

Likewise, the evidence in this case established that appellant, who saw the victim "wobbling" on the right side of the highway, took no action to avoid her. He acknowledged that, based on the width of his truck, there was "not much clearance;" however, he did not slow down, attempt to move to the adjacent lane, or sound his horn to warn the victim. The facts support the court's finding that appellant knew or should have known that his actions created a probability of serious injury and he acted with "reckless or indifferent disregard" to the rights of another. Riley, 277 Va. at 485, 675 S.E.2d at 178. Accordingly, we affirm appellant's conviction for involuntary manslaughter.

Affirmed.