# Staunton.

## WILLIAM RANDOLPH v. COMMONWEALTH.

September 23, 1926.

1. ARREST—*Warrant—Warrant the Best Evidence of its Contents—Case at Bar.*—In the instant case, a prosecution for an assault with intent to kill by accused, upon a person attempting to arrest him, the first assignment of error called in question the action of the trial court in permitting a Commonwealth's witness, the magistrate who issued the warrant, to testify that he issued a warrant for the arrest of accused which charged a felony. Counsel for accused objected to the introduction of this evidence on the ground that the warrant was the best evidence of what it charged; that, in order for the secondary evidence of its contents to be admissible, it should first be shown that diligent search had been made for the warrant and that the same was either lost or destroyed.

   *Held:* That this assignment of error was well founded.

2. ARREST—*Warrants—Warrant the Best Evidence of its Contents—Foundation for the Introduction of Secondary Evidence—Case at Bar.*—In the instant case, a prosecution for an assault with intent to kill by accused, upon a person attempting to arrest him, the magistrate who issued the warrant of arrest testified that he did not keep the warrant and did not know what was done with it.

   *Held:* That this was not sufficient to show that the warrant was lost. It was the duty of the person authorized to make the arrest to return the warrant to the issuing magistrate, or some other magistrate, whose duty, in turn, was to deliver the same to the clerk of the circuit court. Neither the clerk nor the person authorized to make the arrest were introduced to show that they did not possess the warrant.

3. LOST INSTRUMENTS AND RECORDS—*Foundation for the Introduction of Secondary Evidence—Diligent Search—Last Custodian.*—If the basis upon which secondary evidence is sought to be introduced is that the instrument is lost, there must be proof that a diligent search has been made in the place where it is most likely to be found and that the search has been unsuccessful, and the testimony of the last custodian of the paper or record should be produced.

4. ARREST—*Warrants—To Whom Warrant may be Directed.*—While it is usual for a warrant of arrest to be directed to the sheriff of the

county, or a constable of the magisterial district of the county, this is not essential to its validity.

5. JUSTICE OF THE PEACE—*Arrest—Crime Committed in the Presence of Justice.*—A justice of the peace has not only the power to arrest for a felony committed in his presence, but has the power verbally to command any person to take the felon into custody. The same is true as to the commission of a breach of the peace.

6. ARREST—*Warrant—Deputizing one not an Officer to Execute Warrant— Delegation of Power to Arrest by one Deputized to Make the Arrest—Case at Bar.*—In the instant case, a prosecution for an assault with intent to kill by accused, upon a person attempting to arrest him, it was assigned as error that the action of the magistrate in deputizing one H. C., not an officer, to execute the warrant of arrest upon the accused was illegal, and that the act of one J. K. C., who was deputized by H. C., in seeking the arrest of accused was illegal.

*Held:* That the justice had the legal power to direct the warrant to H. C. and thus deputize him to effect the arrest of accused, but that H. C. could not legally delegate the power vested in him to J. K. C. The warrant being directed to H. C. it was his duty to personally execute the same, though he was vested with the power to call others to his assistance in order to execute the warrant.

7. ARREST—*Warrant—Duty of Persons Making Arrest to Inform Accused of his Authority—Production of Warrant.*—Even though one has been lawfully empowed to effect an arrest it is his duty to inform the accused of his authority, and if demanded of him produce the warrant if requested by the accused after submission to the arrest.

8. ARREST—*Warrant—Execution—Who May Execute.*—Where a warrant is executed neither by a sworn officer nor the person to whom it was directed by the magistrate, the warrant is rendered illegal and void as against all persons on whom it was served.

Error to a judgment of the Circuit Court of Scott county.

*Reversed.*

The opinion states the case.

*W. S. Cox,* for the plaintiff in error.

*John R. Saunders,* Attorney General, *Leon M. Bazile* and *Lewis H. Machen,* Assistantt Attorneys General for the Commonwealth.

CAMPBELL, J., delivered the opinion of the court.

The accused was tried upon an indictment which charged the offense as follows:

"That William Randolph, on the ........... day of ..................... in the year one thousand nine hundred and twenty-four, in the said county of Scott, did with malice aforethought, in and upon one J. K. Carter, make an assault, he, the said William Randolph being then and there armed with a dangerous weapon, called a pistol, and did then and there with and by means of said pistol shoot at and towards the said J. K. Carter, with intent, him, the said J. K. Carter, with set purpose and malice aforethought to kill and murder against the peace and dignity of the Commonwealth."

The jury found the accused guilty and fixed his punishment at a fine of one hundred dollars. The motion of the accused to set aside the verdict was overruled and judgment was pronounced by the court in accordance with the verdict. Whereupon the accused applied for and obtained a writ of error from this court.

On the night of the alleged occurrence, the accused, who was a visitor in the home of his aunt, Mrs. Samuel Smith, accompanied by four young ladies and two young men, attended a service at the church situated near the Smith home. The accused, a short time after his departure from the Smith home, returned thereto and informed his aunt that he had become involved in a little trouble at the church, but that it would not amount to anything. Though twenty-one witnesses testified upon the trial of the accused, it is a remarkable fact that the record fails to disclose the nature of the trouble which occurred at the church. The nearest approach to any information upon the subject is the statement of a Commonwealth's witness, named Johnson, who was a magistrate, that he issued a warrant

for the arrest of the accused which charged a felony; and that he deputized Howard Carter and Rhea Miller to execute the warrant. Neither Howard Carter nor Rhea Miller testified in the case, so it is only to be inferred that some one armed with a warrant of arrest was present when the alleged crime was attempted.

It appears from the record that there were thirteen people in the home of Samuel Smith at the time it is charged that the accused attempted to murder J. K. Carter. Among the people present were several ladies. While the record fails to show the number of persons engaged in the effort to arrest the accused, it is shown that there were at least eight persons who were armed with pistols and a shot gun. Two witnesses testified that the "crowd" acted as if they were drinking; that they smelt liquor upon them.

Upon an examination of the Smith home after the difficulty, it was ascertained that in addition to the shot gun holes, there were twenty-seven bullet holes in the house, twenty-four of which were fired by the arresting party. The only person wounded was the accused, who was shot in the back.

[1, 2] The first assignment of error calls in question the action of the trial court in permitting the Commonwealth's witness, Johnson, to testify that he issued a warrant of arrest for the accused which charged a felony. When this evidence was offered, counsel for the accused objected to its introduction on the ground that the warrant was the best evidence of what it charged; that, in order for secondary evidence of its contents to be admissible, it must be first shown that diligent search had been made for the warrant and that the same was either lost or destroyed.

We are of opinion that this assignment of error is well founded. It was incumbent upon the Common-

wealth to produce the warrant or account for its non-production. The Commonwealth attempted to account for the nonproduction of the warrant by showing the connection of Johnson with the same. He testified as follows:

"The warrant issued for the defendant and placed in the hands of Howard Carter was brought back to me later on, and the return on it was in the handwriting of Sheriff C. C. Palmer. It was not in the handwriting of Howard Carter nor Rhea Miller. I did not keep the warrant and do not know what was done with it. I authorized Howard Carter to execute the warrant."

This account is not sufficient to show that the warrant was lost. It was the duty of Howard Carter to return the warrant to either the issuing magistrate, Johnson, or to some other magistrate, whose duty, in turn, was to deliver the same to the clerk of the circuit court, the custodian delegated by law to receive it. Neither Carter nor the clerk were introduced to show that they did not possess the warrant.

[3] In *Marshall* v. *Commonwealth*, 140 Va. 541, 123 S. E. 329, it is said: "If the basis upon which the secondary evidence is sought to be introduced is that the instrument is lost, * * * there must be proof that a diligent search has been made in the place where it is most likely to be found and that the search has been unsuccessful."

In *Judson* v. *Eslava*, Minor (Ala.) 71, 12 Am. Dec. 32, it is said: "The testimony of the last custodian of the paper or record should be produced."

In *Butts* v. *Commonwealth*, *ante*, p. 800, 133 S. E. 764, the facts were: "That the accused had worked for the Royal Guano Company for two days and a half at $2.00 a day when he was discharged by his walking

boss. He thereupon demanded immediate payment of the amount due him, but was told that Saturday was pay day, and that he would have to return on Saturday to get his money, and he was ordered off the premises. He objected to returning on Saturday because it would entail the loss of a day, and further because he thought that if he was discharged he was entitled to immediate payment for the work done. He left the premises, however, peaceably, but, after changing his clothes, he put his pistol in his pocket, and returned to the plant in quest of the superintendent. When he found the superintendent, he stated to him the facts about his discharge, and demanded payment of what was due him. He was again told that Saturday was pay day, and that he would have to return on that day to get his money. There was no controversy over the amount due, and it is conceded on behalf of the Commonwealth that the amount was five dollars. Upon refusal of payment until Saturday, the accused became profane, and pointed a pistol at the superintendent and demanded that he be paid his wages then and there. The accused and the superintendent then went to the latter's office, the accused still holding the pistol in his hand, to ascertain from the accused's time card how much he had earned. The card was produced, and the superintendent 'thereupon took $5.00 of his own money out of his pocket and handed it to the accused, who thereupon at once left the premises'." He was convicted of an attempt at robbery.

The contents of the time card issued the accused became a material issue in the case and, over the objection of the accused, the court admitted parol evidence thereof.

Judge Burks, delivering the opinion of the court,

said: "The ruling of the trial court was plainly erroneous. The time card was contemporaneous written evidence, made by the agent of the prosecutor, of a material fact of vital importance, and was the best evidence of that fact. Even if the witness had been positive in his recollection of the contents of the time card, his testimony as to such contents would not have been admissible, as the existence and ready accessibility of the time card was clearly shown, in fact was admitted. It is elementary law that 'where the contents of a writing are desired to be proved, the writing itself must be produced, or its absence sufficiently accounted for before other evidence of its contents can be admitted.' 1 Greenleaf on Ev. (16th ed.), 682.

"Observation and experience have taught us that human memory is very frail, and that the unaided testimony of witnesses is a very unsatisfactory means of establishing facts of long standing. This is especially true when a witness undertakes to give his recollection of the contents of writings, to relate conversations of others, or to give dates or figures. Decided cases, practically without dissent, reaffirm the rule announced by Lord Tenterden nearly a century ago, when he said in substance: 'I have always acted most strictly on the rule that what is in writing shall only be proved by the writing itself. My experience has taught me the extreme danger of relying on the recollection of witnesses, however honest, as to the contents of written instruments; they may be so easily misled that I think the purposes of justice require the strict enforcement of the rule.' *Vincent* v. *Cole,* 1 Moody & Wilkin 258, 7 L. J. 130."

It is also assigned as error that the action of Johnson, the magistrate, in deputizing Howard Carter to execute the warrant of arrest upon the accused was illegal.

The contention is also made that no one but a duly qualified officer is authorized to summon or deputize another to assist or aid in making an arrest, and therefore the act of J. K. Carter (who was deputized by Howard Carter) in seeking to effect the arrest of accused was also illegal.

[4] . While it is usual for a warrant of arrest to be directed to the sheriff of the county, or a constable of the magisterial district of the county, this is not essential to its validity.

In Davis' Criminal Law, p. 397, it is said: "The warrant may be directed to the sheriff, constable, or any indifferent person by name who is no officer; but no private person is compellable to execute it; whereas the constable, or the sheriff, may be indicted if he do not obey the warrant. When directed to the sheriff, it may be executed as well by any of his deputies as by himself (and he may, it seems, authorize any other person to execute it, by written precept); but when directed to anyone else, he must in general personally execute it, though others may lawfully assist him. Warrants may be directed to officers either by their names, as to A. B., sheriff or constable of the county, etc., or by the description of their office, as to the sheriff of the county, or to any constable of the county, or to the sheriff or any constable of the county. And the officer to whom it is directed, or who received it when the direction is by general description, as well as any private person to whom it is specially directed, may execute it throughout the county, the principle being, that an officer must execute all warrants directed to and received by him, as far as the limits of the magistrate's jurisdiction and his own official bounds extend; and that a private person specially appointed to execute a warrant, may do so anywhere within the magistrate's jurisdiction."

[5] That a justice of the peace not only has the power to arrest for a felony committed in his presence, but has the power verbally to command any person to take the felon into custody cannot be questioned. 1 Hale, 85. The same is true as to the commission of a breach of the peace. *Id.*

[6] While we are of the opinion that the justice had the legal power to direct the warrant to Howard Carter and thus deputize him to effect the arrest of the accused, we are further of the opinion that Howard Carter could not legally delegate the power vested in him to J. K. Carter. The warrant being directed to him, it was his duty to personally execute the same, though he was vested with the power to call others to his assistance in order to execute the warrant. Davis Crim. Law, *supra.*

[7] To permit a private person to delegate the authority vested in him, by reason of the confidence reposed by the magistrate might lead to serious results. The instant case is illustrative of this. The accused had committed some act at the church for which some one thought he should be arrested. Even though J. K. Carter had been lawfully empowered to effect the arrest, it was his duty to inform the accused of his authority, and if demanded of him produce the warrant if requested by the accused after submission to the arrest. That he was not aware of his duty is clear. Instead of making known his mission, he opened the door and said "Poke 'em up," or "Stick 'em up." According to the evidence of several witnesses for the defendant, there was added to this request a vile epithet. Regardless of the fact as to who fired the first shot, it is not surprising that a battle ensued.

[8] In *Wells* v. *Jackson*, 3 Munf. (17 Va.) 464, the same principle is considered. There the appellant

filed his action of assault, battery and false imprisonment against the defendants. The defendant, Jackson, had caused to be issued against the plaintiff and others a peace warrant. This warrant was originally directed to John N. Cully, constable, or Major John Jackson, to execute, but the prosecutor, without the knowledge of the magistrate, struck out the name of Jackson and inserted that of John Black. The latter executed the warrant, and the plaintiff, in default of bond, was committed to jail. In passing upon the validity of the warrant, Judge Cabell held that "the warrant was rendered illegal and void, as against all the persons on whom it was served, in consequence of its having been executed neither by a sworn officer, nor the person to whom it was directed by the magistrate, but by an individual selected by the prosecutor."

The last assignment of error relates to the sufficiency of the evidence. As the case will have to be reversed, for the reasons stated, it is unnecessary to discuss this assignment.

The judgment complained of will be reversed, the verdict of the jury set aside, and the cause remanded for a new trial, to be had not in conflict with the views herein expressed.

*Reversed.*