## Richmond

STANFORD WARE, JR. v. COMMONWEALTH OF VIRGINIA.

January 14, 1974.

Record No. 730395.

Present, All the Justices.

*Paul M. Lipkin* (*Robert H. Anderson, Jr.*; *Goldblatt, Lipkin, Cohen, Anderson, Levy & Jenkins,* on brief), for plaintiff in error.

*Gilbert W. Haith, Assistant Attorney General* (*Andrew P. Miller, Attorney General,* on brief), for defendant in error.

POFF, J., delivered the opinion of the court.

The trial court, sitting without a jury, found Stanford Ware, Jr., guilty under two indictments, tried jointly, one charging abduction and the other rape of Mrs. Carolyn Mays, and fixed his punishment at confinement in the penitentiary for a term of 30 years on each

charge, the sentences to run concurrently. By his several assignments of error, Ware challenged the sufficiency of the evidence to establish venue on the rape charge or to support either conviction.

About 1:00 a.m. on March 19, 1972 as Mrs. Mays was returning to her car with groceries purchased at the Giant Open Air Market in the Wards Corner area of Norfolk, she was accosted by a man who placed a gun against her head, threatened to kill her if she did not remain quiet, forced her to lie on the floorboard on the passenger side of her car, removed her glasses and placed a rag over her face. Although she could not see the direction of travel, Mrs. Mays felt that the man drove the car east along Little Creek Road at a normal speed, made "a lot of turns", and after five or ten minutes, parked at a spot she could not identify. After the attack, the assailant again forced her to lie on the floorboard while he drove to a point in Norfolk near the intersection of Chesapeake Boulevard and Little Creek Road, parked the car, warned his victim not to report the crime and fled. Mrs. Mays immediately went to a nearby taxicab office, called the police and accompanied them to the hospital. She testified that her assailant was a Negro male, about 25 years old, with a thin mustache and sideburns to the bottom of his ear, that he was wearing a red checkered shirt and khaki blue trousers, and that she smelled a heavy odor of alcohol on his breath.

A week later on March 26, 1972, Norfolk police detective Robert W. Towe arrested Ware in the bedroom of his father's home where he was living with his parents, two sisters and two brothers. Towe testified that, after displaying his badge, he "informed [Ware] he was under arrest for a felony" and before he could warn him of his rights, Ware made the spontaneous statement, "I didn't rape that white woman."

Mrs. Mays made a positive in-court identification of Ware.

Dr. James C. Demetrius, a medical doctor and psychiatrist at Central State Hospital where Ware had three times been a patient, diagnosed Ware's mental condition as "schizophrenic condition of paranoid type in remission", a condition in which Ware was capable of understanding the difference between right and wrong. Dr. John F. Hacker, a state psychiatrist who had treated Ware over a period of seven years, monthly over the past three years, confirmed the diagnosis and testified that he had discouraged Ware's desire to learn how to drive. He further testified that Ware was mentally incapable of formulating and executing the methodical plan for abduction and rape described by Mrs. Mays.

Ware testified that he was not Mrs. Mays's assailant and, in explanation of the spontaneous statement he made to Towe, said that several days before his arrest he had been approached in a doughnut shop by an officer who asked for his name and address and told him "he was looking for somebody in so many words"; that he told his father about the incident and his father read him a newspaper account of the rape; and that the recollection of these events prompted the remark he made to Towe. Concerning the newspaper story, Ware's father testified, "I mentioned it to him because people say this man is six feet tall. I was joking with him in a way, kidding with him." The testimony of five members of Ware's family tended to support Ware's testimony in all significant details.

■ As to venue, we perceive no error. While venue must be proved and the burden is on the Commonwealth to prove it, *Randall v. Commonwealth*, 183 Va. 182, 31 S.E.2d 571 (1944), "[e]vidence to prove venue may be direct or circumstantial. [citation omitted]. The facts proved may be aided by judicial notice of geographical facts that are matters of common knowledge . . ." *McClain* v. *Commonwealth*, 189 Va. 847, 853, 55 S.E.2d 49, 52 (1949).

Here, the direct evidence is that the automobile trip began in Norfolk at the intersection of Admiral Taussig Boulevard and Little Creek Road, continued east on Little Creek Road at a normal speed for five or ten minutes and involved "a lot of turns". The return trip, which was "[n]ot very long", ended at a point in Norfolk near the intersection of Chesapeake Boulevard and Little Creek Road. The corporate limits of Norfolk are 40 city blocks east of the scene of the abduction along Little Creek Road, and the Chesapeake Boulevard intersection is 10 city blocks east of the scene of the abduction. These are matters of common knowledge of which the trial court was entitled to take judicial notice. Considering the facts in evidence that the driver was not speeding, that he made a number of turns before stopping, and that the return trip was not very long, the trial court was justified in finding that the scene of the rape was within the city of Norfolk.

■ Neither do we perceive any error as to the sufficiency of the evidence to support the convictions.

Looking, as we must, at the record in the light most favorable to the Commonwealth, we find (1) that Mrs. Mays made a positive and unequivocal in-court identification of Ware, and (2) that at the time of his arrest, Ware made a spontaneous exculpatory statement which

the trier of fact could have reasonably believed was corroborative, extrinsic evidence of Ware's guilt. The permissible scope of our review is defined by statute. Code § 8-491 (Repl. Vol. 1957) states that "the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." In *Tasker* v. *Commonwealth*, 202 Va. 1019, 1026, 121 S.E.2d 459, 464 (1961) we reaffirmed our long-standing rule that "[i]f there is evidence to sustain the verdict, this court should not overrule it and substitute its own judgment, even if its opinion might differ from that of the [trier of fact]. Code § 8-491; *Hall* v. *Commonwealth*, 179 Va. 652, 658, 20 S.E.2d 527, 529; *Ingram* v. *Commonwealth*, 192 Va. 794, 803, 66 S.E.2d 846, 851."

"We cannot say that the evidence of the prosecutrix is 'inherently incredible' or so contrary to human experience or to usual human behavior as to render it unworthy of belief. We cannot say that the verdict of the [trier of fact] is without evidence to support it." *Poindexter* v. *Commonwealth*, 213 Va. 212, 214, 191 S.E.2d 200, 202 (1972).

The judgments of the trial court are

*Affirmed.*