COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Benton and Petty
Argued at Richmond, Virginia


JOHNNIE KENSLEY BROWN, JR.
                                                            MEMORANDUM OPINION* BY
v.        Record No. 1078-06-2                      JUDGE WILLIAM G. PETTY
                                                                   MAY 29, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Gary A. Hicks, Judge

Robert P. Geary for appellant.

Craig W. Stallard, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


Following a bench trial, Johnnie Kensley Brown, Jr. was convicted of grand larceny, in

violation of Code § 18.2-95.  He now appeals, arguing (1) that the Commonwealth did not prove

grand larceny beyond a reasonable doubt, and (2) that "the trial court erred by allowing a store

employee to testify about a theft without the production of the distinctive store box, which would

have established venue."  For the reasons stated below, we affirm the conviction.

I. BACKGROUND

On appeal, we view the evidence in the light most favorable to the Commonwealth, the

party prevailing below, and grant to it all reasonable inferences fairly deducible from the evidence.

Ragland v. Commonwealth, 16 Va. App. 913, 915, 434 S.E.2d 675, 676-77 (1993).  So viewed, the

evidence establishes the following.

───────────────

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On December 27, 2004, Christopher Rooper was working at a Target store in Fredericksburg, Virginia when he detained Brown for shoplifting a box of inkjet cartridges. Rooper called the police, and Officer Joseph Young came to the store to investigate. Officer Young arrested Brown, and searched him incident to that arrest. When Young found a set of car keys in Brown's possession, he asked Brown where the car was located. Brown stated that he did not have a car with him and that he had walked from Washington, D.C. to Fredericksburg.

Later, Officer Young returned to the Target parking lot to investigate further. He hit the panic button on the car keys, which activated the lights and horn on a 2005 Pontiac Grand Am parked in the lot. Young obtained a warrant to search the car and found, among other things, a cardboard box bearing a Target logo and containing inkjet cartridges. Young notified Chris Rooper that he found items from Target in the car, and Rooper came to examine the box. Young photographed the box and its contents, and returned the box to Target.

Rooper observed that the numbering on the Target box found in the car indicated that the box came from the Libbie Place Target store, located in Henrico County. Rooper inventoried the individual inkjet cartridges, finding that there were twenty-four different types of cartridges and a total quantity of fifty-six inkjet cartridges. He then contacted the Libbie Place store and gave them the inventory he had prepared. The box itself was then donated to law enforcement and was not admitted into evidence at trial.

Bill Davis was initially assigned by Target to investigate this incident at the Libbie Place store. After Davis was transferred to an out-of-state Target store, Matthew Peters took over the investigation. After testifying that he was familiar with "a cartridge larceny theft that occurred on December 27, 2004," Peters identified, for admission into evidence, an inventory report that had been prepared by Davis. The inventory listed thirty-seven inkjet cartridges, showing the model and price of each. The Commonwealth's attorney then asked Peters whether the "quantities shown" on

the inventory were "missing from [the] inventory at the" Libbie Place store. He answered in the affirmative. Peters also identified Target security videotapes that were played for the trial court. The tapes showed Brown entering the Libbie Place store with nothing in his hands, walking through the electronics department near the inkjet cartridge display, and leaving the store with a box.

On cross-examination, Peters testified that Target personnel were able to determine whether an item had been purchased by typing a "unique item number" into the store's computer system. However, because he had not compiled the report from which he was testifying, Peters was unaware if such an inquiry had been made. He further testified that he could not say whether the items on the inventory "had been paid for or not."

Officer Young and Christopher Rooper both viewed the videotape as well. Officer Young confirmed that the individual in the videotape was wearing the same clothing as Brown when Brown was arrested, and indicated that the box he was carrying in the video was similar to the one found in his car. Rooper also stated that the box and the clothing were "identical" to that he observed in Fredericksburg.

The trial court convicted Brown as charged and sentenced him to six years and six months, with five years suspended.

## II. ANALYSIS

### A. Sufficiency of the Evidence

To justify conviction of a crime, it is insufficient to create a suspicion or probability of guilt. Rather, the burden is upon the Commonwealth to prove every essential element of the offense beyond a reasonable doubt. Cameron v. Commonwealth, 211 Va. 108, 110, 175 S.E.2d 275, 276 (1970). When reviewing the sufficiency of the evidence presented below to prove the elements of the crime, we "presume the judgment of the trial court to be correct" and reverse

only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also Code § 8.01-680.

Thus, "the relevant question" on appeal "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We are also mindful that circumstantial "evidence 'is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" Hollins v. Commonwealth, 19 Va. App. 223, 229, 450 S.E.2d 397, 400 (1994) (quoting Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983)).

Brown argues that the Commonwealth did not present sufficient evidence at trial to prove that he unlawfully took the inkjet cartridges, thereby failing to prove a necessary element of grand larceny. Code § 18.2-95(ii) defines grand larceny as "simple larceny not from the person of another of goods and chattels of the value of $200 or more." The common law crime of larceny is "the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently." Dunlavey v. Commonwealth, 184 Va. 521, 524, 35 S.E.2d 763, 764 (1945).

A larceny only exists when there has "'been a felonious taking of the property from the possession of the owner . . . .'" Jones v. Commonwealth, 3 Va. App. 295, 301, 349 S.E.2d 414, 418 (1986) (quoting 12A Michie's Jurisprudence, Larceny § 3 (Repl. Vol. 1978)). The taking must be "actual," and it must be unlawful. Id. (citation omitted); see also Maye v. Commonwealth, 213 Va. 48, 49, 189 S.E.2d 350, 351 (1972) (larceny requires "trespassory" taking).

Here, the fact that Peters could not say, based on his personal knowledge, that the inkjet cartridges had been stolen rather than purchased was not fatal to the Commonwealth's case.

Peters' testimony only shows a lack of *direct* evidence that the cartridges were stolen. There is, however, ample circumstantial evidence in this record from which the trial court could conclude that Brown had indeed stolen the inkjet cartridges from the Libbie Place store.

First, while Peters referred to the "missing" inkjet cartridges in his testimony, he was also speaking in the context of a theft investigation, which he had conducted, involving those very cartridges. Second, when arrested in Fredericksburg the same day for theft from a Target Store, Brown attempted to conceal the whereabouts of his car and his possession of the other inkjet cartridges with the unlikely explanation that he walked from Washington, D.C. to the Fredericksburg store. See Rollston v. Commonwealth, 11 Va. App. 535, 548, 399 S.E.2d 823, 831 (1991) ("A defendant's false statements are probative to show he is trying to conceal his guilt, and thus is evidence of his guilt."). Third, the trial court was entitled to infer that the fifty-six inkjet cartridges consisting of twenty-four different types of cartridges found in Brown's possession was inconsistent with a normal consumer purchase. Finally, and most damaging, while still in possession of the Libbie Place cartridges, Brown was arrested at the Fredericksburg Target store attempting to steal more inkjet cartridges. See Jennings v. Commonwealth, 20 Va. App. 9, 15, 454 S.E.2d 752, 755 (1995) (Evidence of other crimes is probative of guilt when it "so resembles the pattern of the offense charged as to raise the probability of a common perpetrator[,]" or "[w]hen proof that the accused committed other crimes or bad acts has a rational basis from which the fact finder reasonably can infer the existence of a material fact or element of the charged crime." (citations and internal quotation marks omitted)). Thus, the trial court could infer that the inkjet cartridges in question were unlawfully taken.

The evidence below was sufficient to support Brown's convictions, and we affirm.

B. Venue

Brown also argues that the trial court erred in allowing Christopher Rooper's testimony regarding the origin of the Target box police found in his car, without requiring the Commonwealth to produce the Target box bearing the distinctive store number for the Libbie Place Target store located in Henrico County. Brown contends the box itself was necessary to establish venue, reasoning that "the best evidence rule . . . requires the party proposing the proposition to produce [the original document, or in this case, the actual box] where the contents of the document per se are to be proved."

Admittedly, the best evidence rule provides that "where the contents of a writing are desired to be proved, the writing [the primary evidence] itself must be produced or its absence sufficiently accounted for before other evidence of its contents can be admitted." Randolph v. Commonwealth, 145 Va. 883, 889, 134 S.E. 544, 546 (1926). Thus, if the purpose is to prove the truth of the contents of a writing, the primary evidence must be produced, if available. It is only when sufficient evidence discloses that the primary evidence is not available that secondary evidence may be admitted for that purpose. Id. When secondary evidence is admitted in such cases, it is introduced to prove the facts contained in the writing. See Myrick v. Commonwealth, 13 Va. App. 333, 339, 412 S.E.2d 176, 179 (1991). Generally, the sufficiency of the evidence relating to unavailability of the writing is a preliminary question addressed to the sound discretion of the trial court. See Beirne v. Rosser, 67 Va. (26 Gratt.) 537, 544-45 (1875).

Even assuming, without deciding, that Brown's argument has merit, we hold that venue was established based on other evidence that existed independent of Rooper's testimony regarding the Target box. First, the Commonwealth presented evidence from Matthew Peters, a Libbie Place Target employee, who verified that inkjet cartridges found among those in the box were those missing from his store. Moreover, witnesses identified Brown as the individual shown leaving the

Libbie Place Target carrying a box similar to the one found in Brown's car on the Libbie Place Target's security videotape.

In reviewing venue on appeal, we must determine "whether the evidence, when viewed in the light most favorable to the Commonwealth, is sufficient to support the [trial court's] venue findings." Cheng v. Commonwealth, 240 Va. 26, 36, 393 S.E.2d 599, 604 (1990). According to Code § 19.2-244, "the prosecution of a criminal case shall be had in the county or city in which the offense was committed." The Commonwealth has the burden to prove venue by either direct or circumstantial evidence. Ware v. Commonwealth, 214 Va. 520, 522, 201 S.E.2d 791, 793 (1974). That "evidence must furnish the foundation for a 'strong presumption' that the offense was committed within the jurisdiction of the [trial] court." Pollard v. Commonwealth, 220 Va. 723, 725, 261 S.E.2d 328, 330 (1980) (quoting Keesee v. Commonwealth, 216 Va. 174, 175, 217 S.E.2d 808, 810 (1975)).

Here, while the Commonwealth did not introduce the box seized from Brown's car into evidence, it clearly established that the crime was committed in Henrico County even absent Rooper's testimony. Based on these facts, we conclude that the Commonwealth presented sufficient evidence to support the trial court's venue findings.

### III. CONCLUSION

There is sufficient evidence in this record to support the conclusion that Brown unlawfully removed the inkjet cartridges from the Libbie Place Target without paying for them. Accordingly, we hold that the Commonwealth both proved beyond a reasonable doubt that Brown committed larceny of the inkjet cartridges and established the necessary venue.

Affirmed.

Benton, J., dissenting.

In every criminal case, where each element of the offense must be proved beyond a reasonable doubt, the imperative to secure convictions free of speculation, surmise, and conjecture is constitutionally based. In re Winship, 397 U.S. 358, 361-62 (1970); Green v. Young, 264 Va. 604, 609, 571 S.E.2d 135, 138 (2002). Thus, when the proof relied upon by the Commonwealth is wholly circumstantial, the following principles pertain:

> All necessary circumstances proved must be consistent with guilt and inconsistent with innocence. It is not sufficient that the evidence create a suspicion of guilt, however strong, or even a probability of guilt, but must exclude every reasonable hypothesis save that of guilt. To accomplish that the chain of circumstances must be unbroken and the evidence as a whole must be sufficient to satisfy the guarded judgment that both the *corpus delicti* and the criminal agency of the accused have been proved to the exclusion of any other reasonable hypothesis and to a moral certainty.

Webb v. Commonwealth, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963).

"Larceny, a common law crime, is the wrongful or fraudulent taking of another's property without his permission and with the intent to deprive the owner of that property permanently." Tarpley v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 763 (2001). "[U]nder the common law definition of that crime . . . there [must be] proof of a trespassory taking." Commonwealth v. Bruhn, 264 Va. 597, 601, 570 S.E.2d 866, 868 (2002). The evidence in this prosecution for grand larceny is lacking precisely because the Commonwealth failed to prove a theft; that is, it failed to prove Johnnie Kensley Brown, Jr. had not purchased the merchandise or otherwise had obtained the cartridges by a trespassory taking.

The evidence proved Brown left the Target store in Henrico with a box, similar to the box found in his car containing inkjet cartridges. No evidence proved, however, that Brown did not purchase the items he had in the box. The store's employee testified as follows:

- 8 -

Q: Mr. Peters, how do you determine from that report . . . the items have not been paid for?

A: Um, we have in conjunction with our closed-circuit TV system, we have a digital video system, um, that's linked in with our registers. And what we can do is each, uh, each item has a unique item number, we can type that into our system and search through any period of time to confirm whether or not an item has been paid for or not.

Q: Okay. Was that done for these items that are on this inventory?

A: I can honestly not say since I did not compile the report.

Q: So you can't say for this inventory whether the goods were paid for or not?

A: No, I cannot.

Simply put, the employee's testimony manifestly established that the Commonwealth's theory involved a *non sequitur*. Proving the inkjet cartridges were "missing from [the] inventory" at the Henrico store was insufficient to prove the cartridges had been removed by theft or trespassory taking. No other evidence proved Brown either did not purchase the cartridges or obtained them by theft.[1]

This evidence created, at most, only a suspicion of larceny. Likewise, the inferences that the majority opinion relies upon created only a suspicion Brown obtained the cartridges by a trespassory taking. It has long been the rule in Virginia "'that the coincidence of circumstances tending to indicate guilt, however strong and numerous they may be, avails nothing unless the *corpus delicti*, the fact that the crime has been actually perpetrated, be first established.'"

---

[1] Apparently, forgetting its burden to prove the elements of the offense, In re Winship, 397 U.S. at 364, the Commonwealth asserts on brief that "[i]f these had been recently purchased items, the defendant should have been able to provide a receipt, or to account for the lack of any receipt, for the cartridges." The Supreme Court of the United States has expressly rejected this reasoning, which "shift[s] the burden of proof to the defendant." Mullaney v. Wilbur, 421 U.S. 684, 700-03 (1975).

Maughs v. City of Charlottesville, 181 Va. 117, 121, 23 S.E.2d 784, 786 (1943) (quoting Poulos v. Commonwealth, 174 Va. 495, 500, 6 S.E.2d 666, 667 (1940)); see also Caminade v. Commonwealth, 230 Va. 505, 510-11, 338 S.E.2d 846, 849 (1986); Barnett v. Commonwealth, 210 Va. 348, 349-50, 170 S.E.2d 760, 761 (1969). When the evidence leaves doubt as to the act, it necessarily leaves doubt as to criminal agency. Caminade, 230 Va. at 510, 338 S.E.2d at 849.

Proof that an investigation existed concerning "missing" inventory of cartridges does not tend to establish a theft of the cartridges. Used in this fashion, the existence of an investigation merely impugns guilt by innuendo and speculation. Similarly, proof that Brown was arrested at a Target store in the City of Fredericksburg has no relevance to establishing that cartridges missing from the inventory at a store in Henrico County were stolen. This is merely bootstrapping on suspicion to serve as the basis for failure to prove a required, predicate fact — theft of the cartridges. While the trial judge certainly was entitled to believe Brown lied to the police officer about walking to Fredericksburg, this provides no factual basis to support the Commonwealth's obligation to prove beyond a reasonable doubt the theft of the cartridges. See Tarpley, 261 Va. at 256-57, 542 S.E.2d at 763 (disbelieving "Tarpley's assertion that he did not intend to 'steal' the car . . . does not provide a factual basis for establishing beyond a reasonable doubt . . . Tarpley intended to deprive [the owner] of his car permanently"); Nelson v. Commonwealth, 12 Va. App. 268, 271, 403 S.E.2d 384, 386 (1991) (disbelieving Nelson's statement to the police officer that he had not been in the truck did not provide a factual basis to prove he stole the truck).

The Supreme Court recently reaffirmed the long-standing principle that "'it is just as obligatory upon the appellate court, to set aside . . . the judgment of a court, when it is, in its opinion, contrary to the law and evidence, and therefore plainly wrong, as it is to sustain it when the reverse is true.'" Jordan v. Commonwealth, ___ Va. ___, ___, ___ S.E.2d ___, ___ (April

- 10 -

20, 2007) (quoting Bland v. Commonwealth, 177 Va. 819, 821, 13 S.E.2d 317, 317 (1941)). A conviction resting on circumstances which cast "a suspicion of guilt, however strong, or even, a probability of guilt, is insufficient to support a criminal conviction." Bishop v. Commonwealth, 227 Va. 164, 170, 313 S.E.2d 390, 393 (1984). For these reasons, I would hold the evidence was insufficient as a matter of law to prove a theft. Therefore, I would reverse the conviction for grand larceny and dismiss the indictment.